BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

-------------------------------------------------------------- X

IN RE JPMORGAN CHASE PAYCHECK     |   MDL No. 2944
PROTECTION PROGRAM LITIGATION     |
    |
    |   **<u>MEMORANDUM IN</u>**
    |   **<u>SUPPORT OF PLAINTIFF'S</u>**
    |   **<u>MOTION TO TRANSFER</u>**
    |   **<u>ACTIONS TO THE CENTRAL</u>**
    |   **<u>DISTRICT OF CALIFORNIA</u>**
    |   **<u>FOR COORDINATION AND</u>**
    |   **<u>CONSOLIDATED PRETRIAL</u>**
    |   **<u>PROCEEDINGS</u>**

## **MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER**

Pursuant to 28 USC § 1407 and Rule 6.2 of the Rules of the Judicial Panel on Multidistrict Litigation ("JPML"), plaintiff Cyber Defense Group, LLC ("CDG") respectfully requests that all currently filed cases identified in the Schedule of Actions ("Actions"), as well as any cases subsequently filed involving similar facts or claims ("tag along cases"), be transferred, consolidated and coordinated for pretrial purposes to the Honorable Andre Birotte Jr. in the United States District Court for the Central District of California.

To date, there are at least ten actions pending in five different judicial districts in the United States involving JPMorgan Chase's unfair and unlawful prioritization of loans made under the Paycheck Protection Program, and it is likely that many more will be filed in jurisdictions throughout the United States.  Transfer for consolidation and coordination is proper because each of these Actions and tag along cases arise out of the same or similar nucleus of operative facts, arise out of the same or similar alleged wrongful conduct, will involve the resolution of the same or similar questions of fact and law, and discovery will be substantially similar and involve many of the same documents and witnesses.

Transfer, consolidation and coordination for pretrial purposes to the Honorable Andre Birotte Jr. in the United States District Court for the Central District of California is appropriate because—in addition to the other factors described below—four of the ten Actions currently are pending in the Central District of California and the first-filed case was assigned to Judge Birotte.

## I.     FACTUAL BACKGROUND

On March 25, 2020, in response to the economic fallout of the COVID-19 crisis, The United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act passed the House the next day and was signed into law by

President Trump on March 27, 2020. The legislation included $377 billion in federally guaranteed loans to small businesses and established a $500 billion government lending program for distressed companies. Unprecedented in size and scope, the legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.

As part of the CARES Act, the Federal Government created a $349 billion loan program, called the Paycheck Protection Program ("PPP"), for small businesses. The PPP intended to provide American small businesses with eight weeks of cash-flow assistance through 100 percent federally guaranteed loans. The loans are backed by the United States Small Business Administration (SBA) but administered by private banks. One of the most important aspects of the PPP loans is that the terms provide criteria for loan forgiveness through a process that incentivizes companies to retain, and not "lay off", employees during this crisis.

It was the express intent of the US Senate and Congress in passing the CARES Act that the funds be used to support small businesses, particularly rural businesses, veteran owned businesses, woman owned businesses, and businesses owned by socially and economically disadvantaged persons.[1] The text of the Bill itself provides "It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years."

The United States Department of the Treasury announced that starting April 3, 2020, small businesses and sole proprietorships could apply for and receive loans to cover their payroll and

---

[1] H.R.748(P)(iv) - CARES Act

other certain expenses through existing SBA lenders.[2] Starting April 10, 2020, independent contractors and self-employed individuals could apply.[3]  Importantly, the PPP loan applications were supposed to be processed on a first-come, first-served basis.[4]

Within this context, JPMorgan Chase ("Chase") served as an intermediary between small businesses and federal funds. Not only did Chase encourage small business owners to apply, they encouraged small business owners to act fast.  Chase communicated to the public that they intended to follow the law and direct the PPP funds to the small businesses that Congress and the Senate intended to help and process the applications in the order received. Chase said in online communications to its applicants: "We're reviewing applications sequentially" and "we cannot prioritize applications" among other representations.  In reality, however, Chase prioritized the loan applications of its biggest and best clients over those received from its small business clients. As a result of prioritizing PPP loans in this way, Chase generated origination fees believed to be more than $100,000,000 in excess of the fees Chase would have originated if PPP loans were processed on a first-come, first-served basis.  These fees were taken out of the funds otherwise available to the small businesses the PPP was supposed to protect.

## II.    ARGUMENT

### A.  Standard for Transfer and Coordination

This Panel considers the following factors when determining whether to authorize transfer and consolidation of multidistrict actions: (1) one or more common questions of fact are pending in different districts; (2) a transfer would serve the convenience of parties and witnesses; and (3) a transfer would promote the just and efficient conduct of the actions. 28 U.S.C. §1407(a). The

---

[2] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf
[3] *Id.*
[4] 13 C.F.R. Part 120, Sec. III(2)(m) ("Is the PPP 'first-come, first-served?' Yes.").

purpose of the multidistrict litigation process is to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *In re: Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Id.* at 493.

Multidistrict litigation is designed "to 'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1229 (9th Cir. 2006), *quoting* 28 U.S.C. § 1407(a)). Upon a motion for transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Products Liability Litigation*, 460 F.3d at 1230. To that end, it considers factors including "the progress of discovery, docket conditions, familiarity of the transferee judge with the relevant issues, and the size of the litigation." *Id. citing* Multidistrict Litigation Manual § 5.16. On the specific issue of whether to centralize litigation in a single district, the Panel considers the convenience of the parties and witnesses, the number of related actions, and the complexity of common questions of fact.

Here, transfer, coordination and consolidation is appropriate because many common questions of fact and law exist, including but not limited to the following: whether Chase prioritized PPP loan applications rather than processing them on a first-come, first-served basis; whether Chase's processing of PPP loan applications violated applicable laws; and whether plaintiffs were damaged by Chase's manner of processing PPP applications.

**B.  Transfer and Coordination of the Actions is Appropriate and Necessary**

The Chase PPP cases are well suited for centralization under Section 1407.  Though many of them were filed in different jurisdictions within the federal court system, these cases are closely related:  they share the same Defendant, the same basic theory of liability, and the same basic factual allegations.  All of the cases will involve the same core discovery, fact witnesses, and experts.  Moreover, because the earliest case was filed on April 19, 2020, none of them has made any significant progress toward trial, making this the ideal time to order transfer.

Further, the Panel previously recognized coordination under Section 1407 for cases challenging banking practices.  *See, e.g., In re EF Hutton Banking Practices Litig.*, MDL No. 649 (S.D.N.Y.); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, MDL No. 2613 (D. S.C.); *In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fl.).  These cases, like the Actions at issue here, all challenged the fairness and lawfulness of banking practices.

It follows that transferring the Actions pursuant to Section 1407 would enhance the convenience and efficiency of this litigation.  Failing to transfer almost certainly would lead to inconsistent and conflicting rulings—particularly with respect to discovery—and would squander judicial resources in several judicial districts.  Accordingly, CDG respectfully requests that the Panel issue an order transferring the Actions to one judicial district for pretrial coordination or consolidation.

**C.  The Actions Share Common Questions of Fact**

The threshold requirement of Section 1407 is that there be questions of fact common to the cases for which MDL treatment is sought.  That requirement is satisfied here.  As explained above, the Actions all arises from Chase's same course of conduct.  Among the numerous common questions of fact are:

    a.   Whether Chase prioritized PPP loan applications rather than processing them on a first-come, first-served basis;

    b.   Whether Chase's processing of PPP loan applications violated applicable laws;

    c.   Whether one or more class actions should be certified pursuant to FRCP 23;

    d.   Whether plaintiffs were damaged by Chase's manner of processing PPP applications; and

    e.   Whether Chase should be forced to disgorge any excess origination fees it generated from prioritizing PPP loan applications.

Given the commonality of factual issues in each of the Actions, MDL treatment is appropriate.

**D.  Pretrial Centralization Will Enhance the Litigation as a Whole**

Transfer is appropriate when it would enhance the convenience of the litigation. *See e.g., In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968) ("[T]he Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in the light of the purposes of the law."). Here, pretrial transfer will undoubtedly ease the burdens on all involved – particularly if, as CDG requests, these cases are transferred to the Central District of California.

As an initial matter, it is important to note all of the Actions are in their nascent stages – no motion practice has taken practice and discovery has not yet begun. Therefore, it is the optimal time for transfer.

Additionally, all parties stand to benefit from pretrial centralization.  Pretrial transfer will reduce the burdens of discovery and costs significantly for Chase. Similarly, consolidation will permit CDG's counsel to coordinate its efforts and share the pretrial workload amongst various

- 7 -

plaintiffs' counsel. The Panel has endorsed this rationale noting, "[P]rudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of case and a minimum of inconvenience to all concerned." *See e.g. In re Baldwin-United Corp. Litig.*, 581 F.Supp 739, 741 (J.P.M.L. 1984). Consolidation of these cases will effectuate this purpose.

Pretrial centralization will also allow Chase to concentrate its attention and energy on one forum, rather than numerous federal jurisdictions throughout the country. As a result, CDG anticipates that Chase will be able to move quickly and effectively to discovery in the transferee court, enhancing the overall efficiency of the litigation. *See In re Apple iPhone 3G Prod. Liab. Litig.*, 630 F. Supp. 2d 1382, 1383 (J.P.M.L. 2009) (noting efficiency obtained through MDL process). Finally, pretrial transfer will reduce the burden on witnesses – most of whom are likely Chase's employees, by substantially cutting down costly and time-consuming travel, duplicative testimony, and discovery. *See e.g., In re Allstate Ins. Co. Underwriting and Rating Practices Litig.*, 206 F.Supp.2d 1371, 1372 (J.P.M.L. 2002).

Given that each of these cases arises from a common core set of factual allegations, counsel for plaintiffs will invariably seek discovery from Chase and witnesses relating to the processing and prioritization of PPP loan applications. MDL treatment will enable a single court to establish a pretrial program that will minimize the inconvenience and expenses of redundant and duplicative discovery, which is precisely the purpose of transfer and coordination under § 1407. *See e.g., In re Accutane*, 343 F. Supp. 2d at 1383 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel, and the judiciary."). In short, transferring the Actions for pretrial

coordination or consolidation will make this litigation far more efficient and convenient for all involved.

### E. Pretrial Centralization Will Promote the Just and Efficient Conduct of These Cases

Fairness and efficiency will be furthered in this litigation by a single centralized and coordinated pretrial program, which will avoid duplicative discovery and inconsistent pretrial rulings, and will conserve the resources of the parties, their counsel and the judiciary. *See In re Levaquin Prods. Liab. Litig*., 560 F. Supp. 2d 1384 (J.P.M.L. 2008); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig*., 398 F. Supp. 2d 1371 (J.P.M.L. 2005). This risk is very real and will likely occur as motions are being filed and courts are setting trial and discovery schedules. There are currently ten cases pending in six different district courts, and more almost certainly will be filed.

Coordinated discovery will benefit all parties. Rather than answering discovery in ten different actions, depositions of key witnesses can be coordinated and done once. Additionally, document productions can be reduced to a single coordinated, central location where all plaintiffs can have access. Being able to streamline the work and coordinate efforts amongst plaintiffs' counsel will serve the interests of the plaintiffs. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig*., 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) ("[I]t is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating and overall savings of cost and minimum of inconvenience to all concerned"). And having one court oversee these actions instead of ten different courts will allow the judiciary to preserve its resources.

If transfer is denied in this litigation, these cases will proceed on independent tracks, requiring duplicative discovery, including repeated depositions of the same corporate personnel. Transfer would also avoid that danger of inconsistent rulings and result in economy of judicial resources.

Should the Panel determine transfer is proper, it should centralize these cases in the Central District of California in front of Judge Birotte.

### F.   The Central District of California is the Most Suitable Venue for the MDL

Once the Panel determines that centralization is appropriate it then "looks for an available and convenient transfer forum." Federal Judicial Center, *Manual for Complex Litig.* § 22.33, at 367 (4th Ed. 2011).   The Central District of California is a suitable venue for the pretrial proceedings of the Chase PPP Litigation. The Panel generally selects a forum that:

> (1) is not overtaxed with other MDL cases, (2) has a related action pending on its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties.

*Id.*  The Central District of California is not overtaxed with other MDL cases. As of April 15, 2020, there were only four MDLs pending in the Central District of California[5] spread among the 26 District Judges housed there. Four of the ten pending Actions were filed in the Central District, and the first-filed case was assigned to the Honorable Andre Birotte, Jr.  *See In re Household Goods Movers Antitrust Litig.*, 502 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (noting that the presence of the "first-filed" action as an influential factor in the selection of the transferee district).

Judge Birotte is an experienced jurist, having been a judge for six years.  Prior to being joining the federal judiciary, Judge Birotte served as the Assistant U.S. Attorney for the Central

---

[5] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2020.pdf

District of California.  Judge Birotte also has MDL experience, with one MDL currently pending in front of him, MDL 2814, *In re: Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig*. The Panel previously found that Judge Birotte "is an experienced transferee judge" and expressed its confidence that Judge Birotte "will steer [the] litigation on a prudent course."[6]

Finally, in terms of convenience to the parties, the Central District of California is certainly a convenient forum. Plaintiffs in four of the ten pending Actions are located within the Central District; the only other district with more than one related case is the Northern District of Illinois, which has two.  *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig*., 471 F. Supp. 2d 1354, 1356 (J.P.M.L. 2007) (selecting the U.S. District Court for the District of New Jersey as the transferee district because, among other things, the majority of the cases were initially filed there). Los Angeles is one of the largest cities in the United States, is equipped with one of the busiest airports in the world, is a hub of major airlines, and there are scores of hotels nearby the courthouse. Los Angeles is a convenient location. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 435 F. Supp. 2d 1342, 1344 (J.P.M.L. 2006) (selecting the Eastern District of New York as the transferee district because, among other things, it "provides a locale that is . . . easily accessible").

///

///

///

---

[6] MDL 2814, *In re: Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig*., Transfer Order dated Feb. 6, 2018.

III.    **CONCLUSION**

For the reasons set forth above, CDG respectfully requests the Actions and tag-along cases should be transferred and consolidated before the Honorable Andre Birotte, Jr., United States District Judge for the Central District of California.

Dated: May 7, 2020

*Respectfully submitted,*
**STALWART LAW GROUP**

Dylan Ruga (235969)
Ji-In Houck (280088)
David M. Angeloff (272929)
1100 Glendon Ave., Ste. 1840
Los Angeles, CA 90024
Phone:  (310) 954-2000
Email:  dylan@stalwartlaw.com
Email:  jiin@stalwartlaw.com
Email:  david@stalwartlaw.com

*Attorneys for: (i) Plaintiffs Cyber Defense Group, LLC, In the Mix Promotions, Inc., and the Proposed Class in C.D. Cal. Case No. 20-cv-3589; and (ii) Plaintiff Ryan M. Kull Licensed Clinical Social Work LLC, and the Proposed Class in S.D.N.Y. Case No. 20-cv-3138.*